UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:17-CV-1213 RLW ) |
| KWENCH, LLC, d/b/a/ Just John Nightclub; RJ INTERNATIONAL, INC., d/b/a RJ Entertainment; and ROMAN RAMOS, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Phoenix Entertainment Partners, LLC ("Phoenix") brings this action RJ International, Inc. ("RJ International"), a mobile entertainment business, and Kwench LLC ("Kwench"), an eating and drinking establishment, alleging the two defendants are liable under §§ 32 and 43(a) of the Lanham Act, 42 U.S.C. §§ 1114(1) and 1125(a), respectively, for violating its trademarks and engaging in unfair competition.[1] Phoenix also alleges the two have violated Missouri's anti-dilution statute, Mo.Rev.Stat. § 417.061, and the common law prohibition against unfair competition.

RJ International and Kwench separately move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.[2]

---

[1]Phoenix also named Roman Ramos, an individual, as a defendant. Phoenix's claims against Ramos shall be dismissed without prejudice for failure to obtain timely service. *See* Fed.R.Civ.P. 4(m).

[2]Kwench earlier filed a motion to dismiss the seminal complaint; this motion will be denied as moot. *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) (motion to dismiss is rendered moot by filing of amended complaint).

## Background [3]

SOUND CHOICE is "a leading brand of karaoke accompaniment tracks . . . particularly well known to commercial karaoke operations." (Am. Compl. ¶18, ECF No. 11.) These tracks are re-recorded and released on CD+G ("compact discs plus graphics") or MP3+G ("MPS3 plus graphics") formats. (*Id.* ¶20.) "Separately from the communicative content of the karaoke accompaniment tracks (i.e., the sound recording and the synchronized lyric and cueing displays), SOUND CHOICE-branded karaoke accompaniment tracks are marked with an identifying logo that appears at the beginning and end." (*Id.* ¶21.) The "tracks are wildly popular among karaoke entertainment providers, patrons, and home consumers." (*Id.* ¶23.) "According to some estimates . . . more than half of all accompaniment tracks played at karaoke shows in the United States originated from [Phoenix's] recordings." (*Id.*) This popularity is attributed to the tracks usually being "the most faithful to the sound of the original recording artist and as providing the most accurate singing cues as part of the video display." (*Id.* ¶24.) Similarly, the association of the SOUND CHOICE brand with a karaoke operator's business or an establishment's karaoke shows "confers on the operator and venue a perception in the marketplace – and among karaoke patrons – of legitimacy and professionalism." (*Id.* ¶25.)

Kwench contracts with RJ International put on karaoke shows at its establishment. (*Id.* ¶31-32.) These shows are advertised as being, and are held, at specific times. (*Id.* ¶33.) RJ International provides the sound equipment over which the tracks are played, "control[s] the

---

[3]Much of the Court's memorandum is taken from its Memorandum and Order in *Phoenix Entm't Corp. v. Sports Legends, LLC*, No. 4:17cv1209 RLW (E.D. Mo. Jan. 23, 2018), just as the same allegations and arguments presented in that case are raised here. And, just as the attorneys did not fail to pay this case their particular attention, the Court undertook the same in-depth review in this case as undertaken in the earlier case.

organization and flow of the performances," and encourages the establishments' "patrons to purchase food and/or beverages and tip their servers." (*Id.* ¶34.)

Kwench and RJ International (hereinafter collectively referred to as "Defendants") cause or permit the Sound Choice marks to be displayed "repeatedly and frequently" during the karaoke shows. (*Id.* ¶35.) The display of the marks "in connection with the services, regardless of the particular song being played, acts as a general advertisement for the services as well as an indicator of the quality of the services being provided." (*Id.* ¶39.) Neither, however, has a "license, permission, authorization, or acquiescence from Phoenix" for playing the Sound Choice tracks. (*Id.* ¶42.) Moreover, RJ International's karaoke operator, Roman Ramos, copied the tracks "from an illicit source." (*Id.* ¶¶9, 36.)

Phoenix alleges that "the frequent, repeated display of the Sound Choice Marks across numerous instances of widely disparate songs" "likely" causes patrons to "view the display of the Sound Choice Marks as an indicator of the affiliation, connection, or association of the Defendants with Phoenix, or of Phoenix's sponsorship or approval of the services and related commercial activities, rather than merely as indicating Phoenix as the creator of the underlying communicative content of any particular song being performed." (*Id.* ¶40.) Thus, the patrons are "likely to be confused regarding the origin or sponsorship of the services being supplied regarding the affiliation or connection of [Defendants] with Phoenix, based on their mistaken belief that the services being provided are provided with Phoenix's knowledge and approval." (*Id.* ¶43.) Defendants profit from the display of the Sound Choice marks during karaoke shows, but Phoenix is damaged by it. (*Id.* ¶44-47.) Defendants also profit from infringing "numerous other producers' intellectual property rights." (*Id.* ¶67.)

For its damage, Phoenix seeks to hold RJ International directly liable and Kwench (hereinafter collectively referred to as the "Venue Defendants") secondarily liable. Phoenix also seeks equitable and injunctive relief. Defendants seek the dismissal of this action. Because RJ International's memorandum in support of its motion incorporates all but one section of Kwench's supporting memorandum,[4] the Court will address both motions as one.

## Discussion

Rule 12(b)(6) Standard. "To survive a 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility standard "'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McShane Constr. Co.*, 867 F.3d at 927 (quoting *Iqbal*, 556 U.S. at 678). "'[D]etermining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires [this] [C]ourt to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678-79) (second and third alterations in original).

Count I: Trademark Infringement. "Karaoke is a form of entertainment, originating in Japan, in which a person sings the vocal line of a popular song to the accompaniment of a pre-recorded backing tape, and the voice is electronically amplified through the loudspeaker system

---

[4]The one section is the first and addresses the issue of Kwench's secondary liability. The Court will address this first section last.

for the audience." *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke and DJ Servs. LLC*, 845 F.3d 1246, 1247 (9th Cir. 2017) (per curiam) (internal quotations omitted). A "karaoke jockey manages and plays the music and shows the displays, announces the songs, and identifies whose turn it is at the microphone." *Phoenix Entm't Corp. v. Boyte*, 247 F.Supp.3d 791, 793 (S.D. Tex. 2017).

At issue in Count I, titled "Trademark Infringement under 15 U.S.C. § 1114(1)," is Phoenix's claim that its two Sound Choice service marks were infringed when displayed by RJ International during karaoke shows at Kwench's venue and in advertising such shows. Phoenix alleges that this display is likely to cause confusion among the establishments' patrons as to (a) the origin or sponsorship of the services being supplied and (b) the affiliation of, or connection between, Defendants and Phoenix.

"A 'trademark' is any word, name, symbol, or device, or any combination thereof – used by a person … to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods …." *Lovely Skin, Inc. v. Ishtar Skin Prods., LLC*, 745 F.3d 877, 882 (8th Cir. 2014) (quoting 15 U.S.C. § 1127) (first alteration in original). "The term 'service mark' means any word, name, symbol, or device or any combination thereof . . . [used] to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services . . . " 15 U.S.C. § 1127. The same criteria govern whether a registered mark for goods or services is infringed. See 15 U.S.C. § 1114(1). [5]

---

[5] Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), provides, in relevant part, that:

Any person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, distribution, or advertising of any goods or services on

Defendants argue the infringement claims should be dismissed because Phoenix is presenting a copyright claim in trademark infringement clothing and such a tactic is foreclosed by the Supreme Court's holding in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Phoenix counters that their *Dastar* reliance is misplaced because Phoenix's marks are separate from the communicative or creative content of the karaoke accompaniment tracks and because RJ International intentionally copies Phoenix's marks. Phoenix's reading of the reach of *Dastar* is too narrow.

A *Dastar* argument is not unfamiliar to courts resolving Phoenix's claims of infringement of its registered Sound Choice marks. *See e.g. Wired for Sound*, 845 F.3d at 1249-50; *Phoenix Entm't Partners, LLC v. Rumsey*, 829 F.3d 817, 822, 828 (7th Cir. 2016); *Phoenix Entm't Partners, LLC v. Star Music, Inc.*, 2017 WL 3498645, *2 (D. Minn. Aug. 15, 2017); *Phoenix Entm't Partners, LLC v. Burke*, 2017 WL 2634953, *2 (M.D. Fla. June19, 2017); *Boyte*, 247 F.Supp.3d at 797-99. At issue in *Dastar* was the claim of Fox Film Corporation that Dastar Corporation was liable for trademark infringement under 15 U.S.C. § 1125(a) when releasing a videotape set about World War II that included portions of a television series produced by Fox on the same subject, but did not include any credit to Fox. 539 U.S. at 27. At the relevant time, Fox had allowed its copyright in its series to expire. *Id.* The Court concluded that the phrase "origin of goods" in § 1125 "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at

---

> or in connection with such use is likely to cause confusion, or to cause mistake, or to deceive … shall be liable in a civil action by the registrant for the remedies hereinafter provided.

37. "To hold otherwise would be akin to finding that § 43(a) [6] created a species of perpetual patent and copyright, which Congress may not do." *Id.* (footnote added).

Citing *Dastar*, courts have concluded that claims of an unauthorized use of the content of Phoenix's karaoke accompaniment tracks are essentially of unauthorized copying and are not cognizable under the Lanham Act. *See Wired for Sound*, 845 F.3d at 1250; *Rumsey*, 829 F.3d at 831; *Star Music*, 2017 WL 3498645, *3; *Boyte*, 247 F.Supp.3d at 799. *But cf. Phoenix Entm't Partners, LLC v. Aguayo*, 2016 WL 952665, *3-4 (M.D. Fla. Oct. 24, 2016) (declining to apply *Dastar* to Phoenix's claims of trademark infringement). [7]

---

[6] Section 43 of the Lanham Act, 15 U.S.C. § 1125, provides, in relevant part, for liability under the Act on the part of

> [a]ny person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, . . . which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

Phoenix's claims of infringement under § 43 are discussed below.

[7] Citing *Slep-Tone Entm't Corp. v. Johnson*, 581 Fed. App'x 815 (11th Cir. 2013), the court in *Aguayo* stated it was following the precedent of the Eleventh Circuit Court of Appeals in declining to apply *Dastar*. At issue on appeal in *Johnson* was the question of damages awarded Slep-Tone after a bench trial and several discovery rulings. 518 Fed.App'x at 817. One motion to dismiss had been filed in the district court; the motion, filed after an answer, was two-pages and included eight-numbered paragraphs without any citations. *See In re SIep-Tone Entm't Corp. consolidated cases,* Case No. 5:11-cv-32/RS-CJK (N.D. Fla. Apr. 6, 2012). The motion was denied in a one-page order citing the standard for ruling on a motion to dismiss. *Id.* (Order of Apr. 30, 2012). Neither the motion, the order denying such, or the appeal presented a *Dastar* or similar challenge. *See Gonzalez-Vega v. Lynch*, 839 F.3d 738, 741 (8th Cir. 2016) (court not obligated to follow implicit resolution of issue in earlier case when issue was not raised by parties or discussed by court).

Absent the word "services" and explicit reliance on its two registered service marks, Phoenix has presented similar allegations regarding unauthorized copying by karaoke jockeys of its tracks, a resulting deterioration in quality, and the use of the inferior copies in karaoke shows in the context of claims of infringement of its registered marks for goods. *See e.g. Rumsey*, 829 F.3d at 820-21 (describing Slep-Tone's business model for selling its karaoke accompaniment tracks and its Lanham Act claims of trademark infringement and unfair competition for the unauthorized copying of such, and then noting that "Slep-Tone characterizes the unauthorized copy of its track as *a distinct good* which the defendants are improperly 'passing off' as a genuine Slep-Tone tracks") (emphasis added); *Phoenix Entm't Partners, LLC v. George and Wendy's Tropical Grill, LLC*, 2017 WL 881826, *1-2 (M.D. Fla. March 6, 2017) (discussing Phoenix's similar background allegations in the context of its claims of *trade dress* infringement); *Burke*, 2017 WL 2634953 at *2-3(discussing Phoenix's similar background allegations in the context of its claims of trademark infringement of its *tangible goods*); *Slep-Tone Entm't Corp. v. Canton Phoenix, Inc.*, 2014 WL 5817903, *1-2 (D. Ore. Nov. 7, 2014) (same).

The question of trademark infringement, and of unfair competition, is whether there is a likelihood of confusion. *See Wired for Sound*, 845 F.3d at 1249. Factors to be considered include "the similarity between the trademark owner's mark and the alleged infringing mark"; "the degree to which the allegedly infringing services competes with the trademark owner's services"; "the alleged infringer's intent to confuse the public"; and "the degree of care reasonably expected of potential customers." [8] *Comty. of Christ Copyright Corp. v. Devon Park*

---

[8]There are two other factors which are not at issue. One is "the strength of the trademark owner's mark" and the other is "evidence of actual confusion." *Comty. of Christ Copyright Corp.*, 643 F.3d at 1009. For purposes of the instant motions, the Court accepts Phoenix's

*Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1009 (8th Cir. 2011); *accord Warner Bros. Entm't Inc. v. X One X Prods.*, 840 F.3d 971, 981 (8th Cir. 2016). Consideration of these factors militates against the likelihood of confusion.

There is little or no similarity or competition between Phoenix's services and RJ International's. In *Boyte*, 247 F.Supp.3d at 793-94, and *Star Music*, 2017 WL 3498645 at *1, Phoenix claimed infringement of its two registered trademarks *and* of its two service marks. The *Boyte* court dismissed the claims on the Sound Choice goods marks, but allowed the service mark claims to proceed. [9] 247 F.Supp.3d at 799-800. In that case, however, there were allegations "that Sound Choice Entertainment actively competes in the karaoke-jockey market and uses the Sound Choice name and logo to advertise and brand its karaoke shows." *Id.* at 799. Because Sound Choice directly competed with the karaoke jockey defendants in the relevant market, the court held that Phoenix had sufficiently alleged that bar patrons "could be confused about whether Sound Choice Entertainment was the company putting on that evening's karaoke

---

allegations its SOUND CHOICE marks are strong. And, at this stage in the litigation, the question of evidence is premature.

[9] Phoenix cites *Phoenix Entm't Partners, LLC v. Jorgenson*, 2016 WL 7046602 (C.D. Ill. Dec. 2, 2106), in addition to *Boyte* and *Aguayo* in support of its argument that the holdings of *Rumsey* and *Wired for Sound* do not apply to its claims of service marks infringement. As discussed above, the reliance on *Boyte* and *Aguayo* is misplaced. *Jorgenson* did allow Phoenix's service mark claims to proceed. The only description of such claims is that "Jorgenson is alleged to compete in the provision of karaoke services to bars and other establishments . . . ." 2016 WL 7046602 at *2. The Court finds the reasoning of *Star Music* to be more persuasive and declines to follow the cursory treatment of *Jorgenson*.

Additionally, the Court notes that the court in *Phoenix Entm't Partners, LLC v. Milligan, Inc.*, 2017 WL 3730572 (M.D. Fla. Mar. 21, 2017), also denied dismissal of Phoenix's claims of service marks infringement. In that case, however, "neither party . . . briefed the issue of whether the provision of Karaoke services constitutes . . . a service" as the term is used in the Lanham Act. *Id.* at *4. In the instant case, that issue is vigorously debated.

show." *Id.* at 800. No such allegations are presented here.[10] In *Star Music*, 2017 WL 3498645 at *3, the court rejected Phoenix's claims that the display of its marks and trade dress during karaoke shows "misled patrons into believing that Phoenix has sponsored or approved the karaoke services." *Id.* The court concluded that "Phoenix's claims of confusion concerning the karaoke services are too speculative, holding that

> [i]t is theoretically possible that a display of Phoenix's marks and trade dress during a particular karaoke show could lead to confusion over the origin, sponsorship, or approval of the show itself, if, say, every single track played by [defendants] at a show displayed Phoenix's marks and trade dress – and if [defendants] also used Phoenix's marks and trade dress in advertising the show – then it is conceivable that a patron could be misled into believing that Phoenix had something to do with the show. But Phoenix's single generalized allegation about the frequency with which its tracks are played at karaoke shows in the United States is insufficient to state a plausible claim against [defendants].

*Id.*

In the instant case, as in *Star Music*, Phoenix describes the popularity of its SOUND CHOICE karaoke accompaniment tracks in the United States without any reference to how frequently RJ International employs them, weakening any inference of intent on its part to confuse venue patrons. Not only does Phoenix fail to define how often Defendants play its tracks, it also alleges that the Defendants are similarly violating "numerous other producer's intellectual property rights." (Am. Comp. ¶67.)

Phoenix further alleges that its service marks are used "in connection with the advertising of [Defendants' karaoke entertainment] services." (Am. Compl. ¶73.) This vague reference is more specifically described in the background portion of the Amended Complaint when Phoenix

---

[10]Phoenix does allege that it is the "sole member of Sound Choice Entertainment, LLC, a Texas limited liability company . . . that is directly engaged in the business of providing karaoke entertainment services to venues in various locations around the United States." (Am. Compl. ¶28.) At issue, however, is Kwench's venue at which RJ International provides karaoke entertainment services. The amended complaint is silent as to that venue.

alleges that Defendants' display of the Sound Choice marks "acts as a general advertisement for the services." (*Id.* ¶39.)

As observed in 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 19.84 (4th ed. 2017), the Lanham Act does not define what constitutes a 'service.'" *The Trademark Manual of Examining Procedure* does, however, and lists three criteria that must be satisfied for an activity to qualify as a registerable "service":

(1) a service must be a real activity;
(2) a service must be performed to the order of, or for the benefit of, someone other than the applicant; and
(3) the activity performed must be qualitatively different from anything necessarily done in connection with the sale of the applicant's goods or the performance of another service.

*Id.* "Services that are capable of being symbolized by a service mark include such things as laundries, insurance sales, railroads, airlines, restaurants, and any business *not solely engaged in the production or merchandising of goods*, but also in the rendering of services." *Id.* § 19.85 (emphasis added). Under this criteria, the claims of Phoenix that Defendants use its Sound Choice marks "in advertising" do not sufficiently describe an activity separate from its claims of infringing copying of its karaoke accompaniment tracks to state a claim of service mark infringement under 15 U.S.C. § 1114(1).

For the foregoing reasons, Phoenix's § 32 claims will be dismissed. *See KP Permanent Make-Up Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004) (defendant need not rebut plaintiff's case if plaintiff has failed to show likelihood of confusion).

Count II: Unfair Competition. Phoenix alleges that the use of its Sound Choice marks in the advertising and performance of Defendants' karaoke entertainment services denies it revenues from the sale or licensing of *authorized* services and deprives it of control over those

marks, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). [11] "Section 43(a) . . . prohibits actions . . . that deceive customers and impair a producer's goodwill." *Dastar Corp.*, 539 U.S. at 32. Phoenix's § 43(a) claims for the reasons set forth above. *See Wired for Sound*, 845 F.3d at 1249 (same standard applies to §§ 32 and 43(a) actions); *Rumsey, 829 F.3d at 822* (same); *Slep-Tone Entm't Corp. v. Sellis Enters., Inc.*, 87 F.Supp.3d 897, 903 (N.D. Ill. 2015) (same).

Count III: Violation of Mo.Rev.Stat. § 417.061. Section 417.061 provides for injunctive relief against a defendant using a counterfeit mark. "'The gravamen of a dilution complaint [under § 417.061] is that the [defendant's] continuing use of a mark similar to the plaintiff's mark will inexorably have an adverse effect upon the value of the plaintiff's mark, and that . . . the plaintiff's mark will eventually be deprived of all distinctiveness.'" *St. Louis Univ. v. Meyer*, 625 F.Supp.2d 827, 831 (E.D. Mo. 2008) (quoting *Frosty Treats Inc. v. Sony Comput. Entm't America Inc.*, 426 F.3d 1001, 1011 (8th Cir. 2005) (last two alterations in original). See also *Comty. of Christ Copyright Corp.*, 634 F.3d at 1010 (trademark holder must show, inter alia, that "infringer's use of its mark created a likelihood of dilution of the distinctive quality of the mark"). Where, however, there is no strong similarity, a claim under § 417.061 fails. *Sensient Techs. Corp. v.SensoryEffects Flavor Co.*, 613 F.3d 754, 770 (8th Cir. 2010). Phoenix's failure to state a claim of service mark infringement dooms its claim of dilution.

Count IV: Common Law Unfair Competition. Phoenix's common law claims of unfair competition mirror those presented in Count II. "Missouri law is well settled that the same facts which support a suit for trademark infringement support a suit for unfair competition and common law infringement." *Comty. of Christ Copyright Corp.*, 634 F.3d at 1010. Conversely,

---

[11]See note 6, *supra.*

the same allegations that fail to support a claim of unfair competition under § 43(a) of the Lanham Act fail to support a claim of common law unfair competition.

Kwench's Motion to Dismiss. In addition to arguing that Phoenix has failed to state a federal or state claim of trademark infringement or unfair competition, Kwench argues it cannot be held secondarily liable for RJ International's actions.

As noted by the court in *Boyte*, 247 F.Supp.2d at 797, "the Lanham Act provides for two forms of secondary liability. "A defendant can be vicariously liable for trademark infringement" and contributorily liable for "intentionally causing or knowingly facilitating the infringement of the plaintiff's mark by a third party." *Id.* (interim quotations omitted). Vicarious liability "requires 'a finding that the defendant and *the infringer* have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" *Id.* (quoting *Hard Rock Café Licensing Corp v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992)). Similarly, "[t]here must be underlying direct infringement by someone other than the secondarily liable defendant in order to hold that defendant liable on a contributory infringement theory." *Id.*

Because Phoenix has failed to state a claim against RJ International on any of its four counts, its claims against Kwench also fail. *See Star Music*, at *3 (dismissing claims of vicarious and contributory liability against two venue defendants after finding Phoenix had failed to allege plausible Lanham Act claims against two operators of karaoke entertainment services). *Cf. Coach, Inc. v. Goodfellow*, 717 F.3d 496, 505-06 (6th Cir. 2013) (concluding that, in "exceptional" case, flea market operator could be held contributorily liable sale of counterfeit goods at market when he continued to rent space to the infringing vendors).

**Conclusion**

The claims of Phoenix against RJ International and Kwench arise from the appearance of SOUND CHOICE marks on karaoke accompaniment tracks allegedly used by RJ International in the karaoke entertainment services it provides at Kwench's establishment. Phoenix has failed to sufficiently allege that that use infringes its service marks.

Accordingly,

**IT IS HEREBY ORDERED** that the motion Kwench LLC to dismiss the original complaint is DENIED as moot. [ECF No. 9]

**IT IS FURTHER ORDERED** that the motion of Kwench LLC to dismiss the amended complaint and the motion of RJ International, Inc., to dismiss the amended complaint are each GRANTED. [ECF Nos. 14 and 15]

**IT IS FINALLY ORDERED** that the claims of Phoenix Entertainment Partners, LLC, against Roman Ramos are DISMISSED without prejudice.

An Order of Dismissal shall accompany this Memorandum and Order.

Dated this 23rd day of January, 2018.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**